**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GREGG HENNIX**, et al.,<br><br>        Plaintiffs,<br><br>        *v.*<br><br>**BELFOR USA GROUP, INC.**, et al.,<br><br>        Defendants. | **CIVIL ACTION**<br><br>**NO. 22-1473-KSM** |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                    **August 25, 2022**

      Plaintiff Gregg Hennix brings a negligence claim against Defendant Belfor USA Group, Inc., the general contractor hired to repair his home after it was damaged in a fire. (*See* Doc. No. 1-1.) He also brings a negligence claim against multiple unknown subcontractors, identified simply as "John Doe Persons or Entities." (*Id.*) Hennix alleges that he suffered "serious, painful, debilitating, and permanent personal injuries" when he slipped and fell off of a cinderblock that Belfor or one of the subcontractors placed below the front door of the home as a temporary step. (*Id.* at ¶¶ 12, 15.) Gregg's wife, Tawanda Hennix, also brings a claim for loss of consortium against all Defendants. (*Id.* at p. 13.) Before us are the Hennixes' Motion to Remand (Doc. No. 12) and Motion for Leave to File an Amended Complaint (Doc. No. 17).

## I.      PROCEDURAL HISTORY

      On March 14, 2022, the Hennixes filed this case in the Court of Common Pleas for Philadelphia County. (*See* Doc. No. 1-1.) One month later, on April 15, Belfor removed the case to this Court on the grounds that the Court has diversity jurisdiction. (*See* Doc. No. 1 at ¶¶ 10–15 (stating that the Hennixes are citizens of Pennsylvania and that Belfor is a citizen of

Colorado and Michigan).)  The Court held a preliminary pretrial conference with counsel on

May 10, and on May 11, issued a Scheduling Order, setting a deadline of May 24, 2022 for the

Hennixes to amend their complaint and/or to join additional parties.  (Doc. No. 11 at ¶ 2.)

On May 24, the Hennixes filed a motion to remand pursuant to 28 U.S.C. §§ 1441 and

1447.  (Doc. No. 12.)  In their motion papers, the Hennixes explain that Belfor produced a list of

the 28 vendors and subcontractors that it used for the job at the Hennixes' home.  (*Id.* at ¶ 15.)

Of the 28 entities listed, the Hennixes argue that "23 of them are clearly citizens of

Pennsylvania," and although "the citizenship of the remaining 5 is not immediately identifiable

based on the limited information provided so far," the Hennixes believe that the "remaining 5 are

likely" also citizens of Pennsylvania "given the nature of the work performed."  (Doc. No. 12 at

¶¶ 15, 16, 24.)  The Hennixes reason that because they identified the "John Doe" subcontractors

in their initial Complaint, and because it is "likely" that all of the subcontractors are citizens of

Pennsylvania, "there is very clear doubt as to federal diversity jurisdiction in this case."  (*Id.* at

¶¶ 26, 27.)  Belfor opposes the motion to remand, arguing that the Court cannot consider the

citizenship of defendants sued under fictitious names in deciding whether a case was properly

removed.  (Doc. No. 14.)

While the motion to remand was pending, the parties proceeded with discovery, and on

July 26, Belfor responded to the Hennixes' interrogatories and document requests.  Those

responses identified AD&C Enterprises, LLC as a subcontractor responsible for providing

"supervision, labor, materials, equipment, and services" to assist Belfor with the renovations at

the Hennixes' home.  (Doc. No. 22-1 at p. 2 § 1.1.)  Belfor's document production also shows

AD&C agreed to certain standards of conduct and safety "relating to the protection of personnel,

property, and the environment."  (*Id.* at p. 2 § 2.2(a).)  The Hennixes argue that "[a]s the entity

responsible for maintaining all required standards of conduct and safety on the construction site . . . AD&C Enterprises is also liable for the damages [Hennix has] suffered."[1]  (Doc. No. 17-1 at p. 7.)

Accordingly, on August 3, the Hennixes moved to amend the complaint to add AD&C as an additional defendant.  (*See generally* Doc. No. 17.)  Although AD&C was identified in Belfor's initial list of 28 vendors, the Hennixes argue that they did not realize the full scope of AD&C's oversight at the home until they reviewed Belfor's responses and documents at the end of July.  Belfor opposes that motion, arguing that the May 24 deadline for amending the complaint has passed and that the Hennixes cannot belatedly amend where they knew the name for every subcontractor, including AD&C, before that deadline.  (*See generally* Doc. No. 18.)

## II.    MOTION TO REMAND

The Court begins with the motion to remand.

Under 28 U.S.C. § 1441(a), a defendant in a civil action in state court may remove the case to federal district court if the federal court would have original jurisdiction.  The federal district courts have "original jurisdiction of all civil actions" between citizens of different states, where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a).  "Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be

---

[1] The Hennixes also confusingly assert that through Belfor's answers to interrogatories, they learned that AD&C "worked on-site in the three weeks prior to Plaintiffs' alleged injury and one week after the alleged injury."  (*See, e.g.*, Doc. No. 17-1 at p. 7.)  The Court interprets Belfor's response differently.  In response to Interrogatory No. 1, which states, "Identify the name of all employees and/or agents of your company . . . that in any way participated in the project at Plaintiffs' home," Belfor states that it "interprets the term 'employees and/or agents' to mean individuals employed by Belfor only" and confirms that its "document production identifies employees who worked on-site in the three weeks prior to plaintiffs' alleged injury and one week after the alleged injury."  (Doc. No. 17-10 at pp. 5–6 ¶ 1.)  This answer suggests that Belfor's document production, identifies *individuals* employed *by Belfor* at the project during that time frame.  It does not suggest, as the Hennixes claim, that subcontractors identified in the document production were at the site during that three-week period.

strictly construed and all doubts should be resolved in favor of remand." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985).

Here, the parties do not dispute that the amount in controversy is greater than $75,000 or that the Hennixes, citizens of Pennsylvania, are diverse from Belfor, a citizen of Colorado and Michigan. Instead, their dispute turns on the unnamed John Doe Defendants. The Hennixes urge us to consider the probable citizenship of the fictitious defendants, arguing that under the Third Circuit's opinion in *Abel v. State Farm Fire & Casualty Co.*, the Court must analyze whether the allegations in the Complaint "are sufficient on their face to destroy diversity," looking "for 'some clue who the Doe might be, how the Doe might fit into the charging allegations, or how the Doe might relate to the other parties.'" 770 F.2d at 30 (quoting *Hartwell Corp. v. Boeing Co.*, 678 F.2d 842, 843 (9th Cir. 1982)). (Doc. No. 13-1 at p. 6.) Belfor opposes this approach, arguing that the removal statute forbids any consideration of the citizenship of fictitious defendants. (Doc. No. 14 at pp. 3–4.)

We are compelled to agree with Belfor. In 1988, three years after the Third Circuit issued its opinion in *Abel*, the removal statute was amended to include this provision: "In determining whether a civil action is removable on the basis of [diversity jurisdiction] under section 1332(a) of this title, the citizenship of defendants sued under fictitious names *shall be disregarded*." 28 U.S.C. § 1441(b)(1) (emphasis added); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989) ("Section 1016(a) of the Act amends 28 U.S.C. § 1441(a) by adding the following sentence: 'For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.'").

Given this amendment, the Court cannot consider the citizenship of the John Doe Defendants in determining whether this case was appropriately removed. *See Hereford v.*

*Broomall Op. Co. LP*, 575 F. Supp. 3d 558, 562 (E.D. Pa. 2021) ("I note at the outset that in determining whether diversity exists, Plaintiffs' inclusion of Doe defendants in their original complaints carries no weight pursuant to Congress's amendment of the removal statute . . . ."); *see also, e.g.*, *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1226, 1235 (10th Cir. 2006) ("We join these other circuits in holding, consistent with the text of 28 U.S.C. § 1441(a), that the citizenship of 'John Doe' defendants should be disregarded when considering the propriety of removal under 28 U.S.C. §§ 1441(a) and 1332."); *Howell ex rel Goerdt v. Tribune Enter. Co.*, 106 F.3d 215 (7th Cir. 1997) ("[N]aming a John Doe defendant will not defeat the named defendants' right to remove a diversity case if their citizenship is diverse from that of the plaintiffs." (citing 28 U.S.C. § 1441(a))); *Alexander v. Elec. Data Sys. Corp.*, 13 F. 3d 940, 948 (6th Cir. 1994) ("It is clear that 'Jane Doe' is a fictitious name; no such real person was ever named, and plaintiff never identified the alleged person who was 'EDS' Personnel Manager in Michigan in [sic] within the time period covered.' Section 1441(a) compels that this 'named' defendant be disregarded for purposes of diversity jurisdiction."); *Bryant*, 886 F.2d at 1528 (finding that with this amendment, "Congress obviously reached the conclusion that [D]oe defendants should not defeat diversity jurisdiction"); *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1276 (N.D. Okla. 2006) ("It is axiomatic that complete diversity is required. For purposes of removal under § 1441(a), however, the Court disregards the citizenship of defendants sued under fictitious names." (citations omitted)).

Considering the citizenships of only the named parties, this Court had diversity jurisdiction when the case was removed, and therefore, removal was proper. Remand is not warranted under § 1441.[2]

---

[2] The Hennixes also request remand under § 1447(e). We address this statute below in

### III.    MOTION TO AMEND

That does not, however, end the jurisdictional inquiry because the Hennixes have also asked for permission to amend the complaint to join AD&C as a defendant.  AD&C is a Limited Liability Company ("LLC"), and documents filed by AD&C with the Commonwealth of Pennsylvania show that Austin Duchaine, a citizen of Pennsylvania, is a member of the LLC.[3] (*See* Doc. No. 22-2 (listing Austin Duchaine as an organizer, living in York, Pennsylvania).) AD&C is, therefore, a citizen of Pennsylvania, and joining it as a defendant would defeat the Court's diversity jurisdiction.  *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418–20 (3d Cir. 2010) (explaining that a "natural person is deemed to be a citizen of the state where he is domiciled," and "the citizenship of an LLC" is determined "by the citizenship of each of its members").

In deciding whether to allow amendment in these circumstances, the Court must engage in a two-part inquiry.  First, because the Hennixes look to amend the Complaint after the Scheduling Order deadline, we must determine whether amendment is permissible under Federal Rules of Civil Procedure 15 and 16.  Second, if amendment is permissible under the Federal Rules, we must then determine whether the joinder of this particular defendant, which would destroy diversity, is permissible under 28 U.S.C. § 1447(e).

### A.    *Federal Rules of Civil Procedure 15 and 16*

#### 1.    Legal Standard

Generally, a motion to file an amended pleading is governed by Federal Rule of Civil

---

connection with the motion to amend.

[3] The Court may take judicial notice of publicly filed documents, including the Certificate of Amendment that AD&C filed with the Pennsylvania Department of State.  *See Odrick v. Scully Co.*, CIVIL ACTION No. 17-02566, 2018 WL 6044929, at *1 n.4 (E.D. Pa. Nov. 19, 2018) ("The Court will take judicial notice of the Secretary of State search results."); *cf. Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (taking judicial notice of SEC filings).

Procedure 15, which allows a party to "amend its pleading once as a matter of course within 21

days after serving it, or . . . 21 days after service of a responsive pleading or 21 days after service

of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "In all

other cases, a party may amend its pleading only with the opposing party's written consent or the

court's leave," which should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The burden is on the party opposing the amendment, and the "touchstone of the rule is a showing

of prejudice" to the opposing party.  *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279 (E.D.

Pa. 2010).  "In the absence of substantial or undue prejudice, denial [of a motion to amend] must

be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure

to cure deficiency by amendments previously allowed or futility of amendment."  *Heyl &*

*Patterson Int'l, Inc. v. F. D. Rich Hous. of the V.I., Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).

　　　　However, when a party seeks leave to amend a pleading after a deadline set by a court

order, "the decision whether to allow the amendment is controlled by Rule 16(b)," which states

that a scheduling order "may be modified only for good cause and with the judge's consent."

*Price*, 737 F. Supp. 2d at 279.  Once a deadline in a scheduling order has passed, "the party

seeking the amendment is effectively asking the court not only for leave to amend its pleading,

but also the scheduling order," which means that the "party's request now implicates the

effective administration of justice."  *Id.*  Accordingly, the party must show "good cause in order

to procure the court's consent."  *Id.*; *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316,

319 (3d Cir. 2020) ("[W]hen a party moves to amend or add a party after the deadline in a

district court's order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules

of Civil Procedure applies."); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701

(E.D. Pa. 2007) ("[O]nce the pretrial scheduling order's deadline for filing motions to amend the

pleadings has passed, a party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading."); *cf. E. Mins. & Chem. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000) (affirming the district court's order denying motion to amend under Rule 16(b) and concluding that "the District Court acted well within its discretion when it denied Eastern's motion to amend the complaint six months after the amendment and joinder deadlines had expired").

"'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order." *Chancellor*, 501 F. Supp. 2d at 701. In other words, "if the party was not diligent, there is no 'good cause' for modifying the scheduling order and allowing the party to file a motion to amend its pleadings." *Id.* To demonstrate diligence, the plaintiff must provide "a clear and cognizable explanation why the proposed amendment was not included in the original pleading." *Id.* at 702.

### 2.   Diligence Under Rule 16

The Hennixes argue that they diligently worked "to identify the additional John Doe Defendants referenced in the original Complaint." (Doc. No. 17-1 at p. 8.) Belfor disagrees, arguing that the Hennixes were not diligent because "they possessed the identity of the party that they now belatedly move to include" before the deadline passed. (Doc. No. 18 at p. 5.) Belfor relies on the list of 28 subcontractors and vendors that it sent to the Hennixes on May 20, emphasizing that at that point, the Hennixes "knew that AD&C provided labor on the project." (*Id.* at p. 6.)

We are not convinced by Belfor's argument. Although Belfor told the Hennixes on May 20 that AD&C was a subcontractor and that it provided "labor" for the project, Belfor provided *no* information about the timing or scope of that work. (*See* Doc. No. 17-8.) To the contrary,

Belfor merely identified AD&C on a list with 28 other vendors and subcontractors and for each, described the "work performed" using vague one-word answers, like "supplies," "labor," and "kitchen."[4]  (*Id.*)  We decline to find that this list, on its own, was sufficient to place the Hennixes on notice that AD&C may have been responsible for overseeing the project or for placing the cinderblock by the front door of the home.

Nor can we find that the Hennixes delayed in seeking this information.  To the contrary, from the beginning of this litigation, they have sought information about Belfor's subcontractors with the understanding that they will add the potentially responsible subcontractors as defendants.  The initial Complaint included "John Doe Persons or Entities," which were described as "adult individuals or entities whose identities are not yet known, who are also responsible for the harm complained of herein."  (Doc. No. 1-1 at p. 10 ¶ 4.)  In the parties' Joint Rule 26(f) Report, the Hennixes similarly stated, "Upon exiting the front door, Mr. Hennix stepped down onto a cinderblock, which had been placed below the threshold of the door allegedly by the Defendant *and/or Defendant's subcontractors (whose identity(ies) Plaintiffs have not yet discovered)*."  (Joint 26(f) Report at p. 2 (emphasis added).)  They noted that an anticipated issue in discovery would be "the identities of subcontractors and the scope of their work."  (*Id.*; *see also id.* at p. 4 ("The Parties have not yet engaged in any settlement discussions given that . . . discovery regarding liability *and subcontractors* has yet to be conducted." (emphasis added).)

On May 9, 2022, the day before the Court's preliminary pretrial conference, the Hennixes served Belfor with interrogatories, many of which requested information about the

---

[4] Indeed, even if we were to find that the general descriptor "labor" was sufficient to notify the Hennixes of the scope of AD&C's work, we would be compelled to note that AD&C is one of three subcontractors whose work is so described.  (*See* Doc. No. 17-8.)

subcontractors and vendors used for the project.  (*See* Doc. No. 17-6.)  Among other things, the Hennixes asked Belfor to "identify by name and address any subcontractor you hired to perform the work and when the work was performed."  (*Id.* at p. 5 ¶ 6.)  The Hennixes also sought "copies of any correspondence and/or any written materials you exchanged with any subcontractor which relates to work performed on behalf of Plaintiffs."  (*Id.* at p. 11 ¶ 4; *see also id.* at p. 11 ¶ 3 ("Produce each contract you entered into with any subcontractor in connection with Plaintiffs.").)

When the Court entered its May 11, 2022 Scheduling Order, which set the amendment deadline for May 24—one month earlier than the deadline requested by the parties[5]—Plaintiffs' counsel followed up with defense counsel about the subcontractors' identities:

> Joel & George—The Judge's [S]cheduling Order cut our agreed time frame within which to file an Amended Complaint by a month to May 24.  I had hoped to have the names of the subcontractors in time to include them by name in the Amended Complaint. . . .  If you have the names and contact info for the subs I'd appreciate you providing that before May 24.

(Doc. No. 17-7 at p. 3.)  In response, Belfor's counsel provided the list of 28 vendors.

Because Belfor's list was not on its own sufficient notice of AD&C's potential liability, the question becomes:  when should the Hennixes have known about AD&C's role at the site, and accordingly, its potential liability in this case?  We find the answer to this question is July 26, 2022, when the Hennixes received a copy of the Master Services Subcontractor Agreement between Belfor and AD&C.  (*See* Doc. No. 17-9; Doc. No. 22-2.)  It was only then that the Hennixes learned the full scope of AD&C's performance at the construction site.  (Doc. No. 22-2

---

[5] The Hennixes' need for additional time was not discussed during the parties' initial preliminary pretrial conference with the Court.  Because the Court did not know why the parties requested additional time, we issued our standard scheduling order, which sets the deadline for amendment as two weeks after the date of the conference.

at p. 2.)  Because the Hennixes filed their motion to amend eight days later, we find they

diligently brought this motion to amend.

The Hennixes have demonstrated good cause for amending the complaint after the

Scheduling Order deadline.  Therefore, the amendment is permissible under Rule 16.

### 3.  <u>Prejudice and Delay Under Rule 15</u>

Next, Belfor argues that amendment is improper under Rule 15 because the Hennixes

acted with undue delay and allowing the amendment would prejudice Belfor.  (Doc. No. 18 at

pp. 6–7.)  "The issues of undue delay and undue prejudice overlap somewhat, as delay generally

cannot be undue unless it has caused some prejudice to the non-moving party."  *Formosa*

*Plastics Corp., USA v. Ace Am. Ins. Co.*, 259 F.R.D. 95, 99 (D.N.J. 2009).  "The analyses,

however, are distinct, as 'the question of undue delay . . . requires that we focus on the plaintiffs'

motives for not amending their complaint to assert this claim earlier; while the issue of prejudice

requires that we focus on the effect on the defendants.'"  *Id.* (quoting *Adams v. Gould, Inc.*, 739

F.2d 858, 868 (3d Cir. 1984)).

Belfor argues that the Hennixes acted with undue delay in bringing the motion to amend

because they knew AD&C was a subcontractor before the deadline passed.  This is essentially a

rehashing of Belfor's diligence argument.  Accordingly, the Court finds no undue delay for the

same reasons that the Court found the Hennixes acted diligently.  Belfor raises one additional

argument as to delay, asserting that the Court should not grant the amendment here because the

Hennixes "failed ever to ask the Court for an extension and instead filed a motion to remand."

(Doc. No. 18 at p. 7; *see also* Doc. No. 21 at p. 1 ("If plaintiffs needed more time to determine

whether they wanted to amend their complaint, it was their **<u>duty</u>** to seek leave from the

Court . . . .").)  This is incorrect.  At the end of their motion to remand, the Hennixes state:

Should the Court determine this Motion to be premature based on

> Belfor's [discovery] responses not having yet been provided (and presuming timely and complete responses from Belfor by June 8), it is respectfully requested in the alternative *that the Court extend the deadline for amending and/or adding parties* to the originally requested date of June 24, 2022 with the right for Plaintiffs to reassert their Motion to Remand if applicable.[6]

(Doc. No. 13-1 at p. 7 (emphasis added).)  Given this request and the Hennixes' repeated assertions about joining one or more subcontractors, we will not find their delay undue.

As for prejudice, we must consider "whether permitting the amendment would (1) require [Belfor] to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay resolution of the dispute; or (3) prevent a party from bringing a timely action in another jurisdiction."  *Formosa Plastics Corp., USA*, 259 F.R.D. at 99 (citing *Long v. Wilson*, 292 F.3d 390, 400 (3d Cir. 2004)); *see, e.g.*, *Cornell & Co., Inc. v. Occupational Safety & Health Review*, 573 F.2d 820, 825 (3d Cir. 1978) ("In the instant case, the prejudice resulting from permitting the amendment is even clearer since the record shows that the Secretary's delay was the direct cause of the inability of Cornell to secure the testimony of witnesses vital to its defense.").

Belfor does not argue that the Hennixes' amendment would prevent it from defending itself in this case.  *See Formosa Plastics Corp., USA*, 259 F.R.D. at 99 ("Prejudice involves the serious impairment of the defendant's ability to present its case.").  Instead, it argues, without discussion, that because the "proposed amended complaint pleads that AD&C is a Pennsylvania corporation," the addition of this defendant "would destroy diversity jurisdiction" and would

---

[6] The initial deadline for Belfor to respond to the Hennixes' discovery requests was June 8, 2022. However, as a professional courtesy, the Hennixes agreed to Belfor's request for an extension.  Belfor cannot now argue that the Hennixes acted with undue delay when it was Belfor's actions that delayed their learning the information needed to amend the Complaint.  To do so would not only be inequitable, it would discourage attorneys from treating each other with professionalism and resolving discovery disputes without the Court's intervention.

work "an end run around this court's pending decision on the motion to remand."  (Doc. No. 18 at p. 7.)  This argument is more appropriately addressed as a question of whether the Court should permit joinder of a non-diverse defendant under § 1447(e), an issue that the Court addresses in the next section.

Accordingly, we find that the amendment is permissible under Rule 15.  The Hennixes have neither acted with undue delay nor caused unfair prejudice.

### B.      Section 1447(e)

Although the Hennixes are permitted to file an amended complaint under the Federal Rules of Civil Procedure 16 and 15, the Court must still determine whether they can add a non-diverse defendant that would destroy subject matter jurisdiction.  This question is governed by 28 U.S.C. § 1447(e).  *See Aldorasi v. Crossroads Hospitality & Mgmt. Co.*, 344 F. Supp. 3d 814, 826 (E.D. Pa. 2018) ("Although Plaintiff's proposed amendment is not futile, because the amendment would have the effect of rejoining defendants whose presence in the case would destroy diversity jurisdiction, it is also governed by 28 U.S.C. § 1447(e).").

Under Section 1447(e), where a plaintiff "seeks to join additional defendants whose joinder would destroy subject matter jurisdiction" after removal, the court has the discretion to either "deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e); *see also Aldorasi*, 344 F. Supp. 3d at 826 ("Section 1447(e) gives a district court discretion whether to permit a plaintiff to join a diversity-destroying defendant in a removal action.").  In July of this year, the Third Circuit adopted the Fifth Circuit's factor test—outlined in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987)—for analyzing the post-removal joinder of a nondiverse defendant.  *See Avenatti v. Fox News Network, LLC*, 41 F.4th 125, 131–33, 135 (3d Cir. 2022) (explaining that the court's discretion to drop a non-diverse defendant under Rule 21 may be guided by "the factors delineated in *Hensgens*, just as [it] would in cases

where § 1447(e) applied on its face").  In *Hensgens*, the Fifth Circuit set forth four factors that

courts should consider in determining whether to permit a plaintiff to join a non-diverse

defendant post-removal:

> (1)    The extent to which the purpose of the amendment is to defeat federal
>        jurisdiction;
>
> (2)    Whether plaintiff has been dilatory in asking for amendment;
>
> (3)    Whether plaintiff will be significantly injured if amendment is not allowed; and
>
> (4)    Any other factors bearing on the equities.

*Hensgens*, 833 F.2d at 1182; *see also Aldorasi*, 344 F. Supp. 3d at 826 ("[A] district court faced

with an amended pleading naming a nondiverse defendant in a removal case 'should scrutinize

that amendment more closely than an ordinary amendment,' and should 'consider a number of

factors to balance the defendant's interest in maintaining the federal forum with the competing

interests of not having parallel lawsuits.'" (quoting *Hensgens*, 833 F.2d at 1182).)  We address

each *Hensgens* factor in turn.

### 1.    <u>Purpose of the Amendment</u>

Under the first *Hensgens* factor, the Court must consider whether the Hennixes seek to

amend their complaint for the purpose of defeating diversity jurisdiction.  *Id.*  To answer this

question, courts consider whether the plaintiff knew of the additional defendants at the time she

filed the original complaint or whether the plaintiff gained additional information regarding the

identities of the additional defendants through post-filing developments.  *See Montevalo v. John

Doe I*, Civil Action No. 10–2617, 2010 WL 3928536, at *4 (E.D. Pa. Oct. 5, 2010).  Where a

plaintiff was aware of the additional defendants at the time she initiated the lawsuit but chose not

to name them, that suggests she joined them after removal in order to destroy diversity.  *Id.*

As discussed in the previous section, the Hennixes only learned the true nature of

AD&C's involvement on July 26, 2022, just eight days before they moved to amend.  *See Taylor v. GGNSC Phila., LP*, CIVIL ACTION NO. 14-7100, 2015 WL 5584781, at *6 (E.D. Pa. Sept. 23, 2015) ("Plaintiff's receipt of the [certificate of merit] after removal is a relevant subsequent event which negates an improper purpose to destroy diversity jurisdiction.").  In addition, the Hennixes join AD&C in the place of the John Doe Defendants included in the initial Complaint. The inclusion of fictitious defendants in the initial Complaint suggests that the Hennixes are not joining AD&C now merely to destroy diversity.  *See, e.g.*, *Hereford*, 575 F. Supp. 3d at 560 (permitting the plaintiffs to amend the complaint to identify individual defendants "in place of the previously identified Doe defendants"); *Agostino v. Costco Wholesale Corp.*, Civ. No. 19-8976 (MCA)(MAH), 2019 WL 6080242, at *4 (D.N.J. June 24, 2019) (finding that the plaintiffs "had a legitimate reason for failing to name" an individual defendant where they were unable to learn of his identity and "named John Does 1-10 as a safeguard"); *Montalvo*, 2010 WL 3928536, at *4 (permitting the plaintiff to amend the complaint to name individuals where the original complaint listed John Doe defendants).  Likewise, the Hennixes' counsel repeatedly told defense counsel that he intended to amend the complaint to join the subcontractors in place of the John Doe Defendants and that he hoped to do so before the deadline listed in the Scheduling Order. (*See, e.g.*, Doc. No. 17-7 at p.3 (email from the Hennixes' counsel to defense counsel, explaining that "the Judge's [S]cheduling Order cut our agreed time frame within which to file an Amended Complaint by a month to May 24.  I had hoped to have the names of the subcontractors in time to include them by name in the Amended Complaint. . . .  If you have the names and contact info for the subs I'd appreciate you providing that before May 24.").  Last, we find it telling that here, the claims against AD&C arise out of the same set of operative facts as the claims against Belfor. *See Taylor*, 2015 WL 5584781, at *6 ("Plaintiff's motivation in seeking joinder was not to defeat

diversity, but to promote fairness and economy by avoiding the necessity of prosecuting two claims in different fora.").

The first factor weighs strongly in favor of joinder.

### 2. Dilatoriness

The second *Hensgens* factor asks the Court to analyze whether the plaintiff was dilatory in amending her complaint. *Hensgens*, 833 F.2d at 1182. In considering whether a plaintiff was dilatory, courts "takes into consideration the length and nature of the delay." *Fields v. Zubkov*, No. 08–2016, 2008 WL 4447098, at *6 (D.N.J. Sept. 26, 2008); *see also Taylor*, 2015 WL 5584781, at *6 ("An action is dilatory when the purpose of plaintiff's delay in seeking an amendment was to prolong the litigation."). As discussed at length in this Memorandum, the Court finds the Hennixes were not dilatory in seeking amendment. The second factor also weighs in favor of joinder.

### 3. Injury to Plaintiff

Under the third *Hensgens* factor, the Court looks to whether a plaintiff would be prejudiced were they not allowed to join the additional defendants. *Hensgens*, 833 F.2d at 1182. Where the claims asserted against the newly joined defendants arise out of the same set of operative facts as the claims asserted against the originally named defendants such that they would be forced to litigate duplicative cases, it is more likely that the plaintiff would be prejudiced were the additional defendants not joined. *Taylor*, 2015 WL 5584781, at *6; *see also Aldorasi*, 344 F. Supp. 3d at 827–28 ("With respect to the third factor—whether the plaintiff will be significantly injured if amendment is not allowed—although denial of amendment would not preclude Plaintiff from maintaining a separate lawsuit against Ray and McFeeters in state court, district courts within the Third Circuit have recognized that the burden of maintaining parallel state and federal actions, requiring duplicative work and raising the prospect of inconsistent

rulings, is both economically and, potentially, legally prejudicial to the plaintiff.").

Here, the Hennixes bring the same claims against AD&C that they bring against Belfor. (*See generally* Doc. No. 17-11 (the proposed Amended Complaint).)  The underlying facts supporting the claims against each company are the same.  (*Id.*)  The only question is whether and to what extent each company was responsible for the construction site at the time and for the placement of the cinderblock underneath the front door.  Because the Hennixes would be injured if required to separately litigate these claims, the Court finds the third factor likewise weighs in favor of joinder.

### 4.   Other Equitable Factors

Last, the Court must consider anything else bearing on the equities of the joinder. *Hensgens*, 833 F.2d at 1182.  "Equitable factors considered by courts in this District include the efficient use of judicial resources, the effect remand will have on the defendant, and the expertise of the court relative to the applicable law." *Taylor*, 2015 WL 5584781, at *7.

The efficient use of judicial resources weighs against splitting up this case and requiring two courts to oversee litigation of the same essential facts.  *See id.* ("[C]ourts have found that where two lawsuits arise from a common nucleus of fact, judicial economy will be negatively affected by allowing concurrent federal and state proceedings.").  Likewise, there is no question that the Court of Common Pleas is just as capable as—if not better equipped than—this Court at applying Pennsylvania law.  *See Taylor*, 2015 WL 5584781, at *7 ("[W]hen there is a lack of a significant federal interest in deciding the state law issues, federal courts prefer to have state courts interpret their own laws." (quotation marks omitted)); *see also Aldorasi*, 344 F. Supp. 3d at 828 ("The first and third [equitable] considerations clearly favor allowing amendment, which will serve the interest of judicial economy by avoiding the risk of parallel litigation and ensure that Plaintiff's Pennsylvania law claims are decided by a Pennsylvania court.").

As for the effect on Belfor, although Belfor may prefer to litigate this case in federal court, it has not identified any tangible prejudice that will result if it is required to litigate in state court. Notably, the state court is located in the same city as the federal court, and Pennsylvania law will apply in either forum. And Belfor has not, for instance, raised a defense that turns on federal law or otherwise pointed to issues which this Court would be peculiarly adept at deciding. *Contra Testa v. Broomall Op. Co.*, CIVIL ACTION NO. 21-5148-KSM, 2022 WL 1694180, at *8 (E.D. Pa. May 26, 2022) (finding that the "equities weigh somewhat in favor of granting the motion to strike" the amended pleading where "Defendants have raised defenses under the PREP Act, a federal law, so this Court has expertise in the applicable law"). Therefore, the Court does not find that prejudice to Belfor outweighs the other equitable considerations. *See Aldorasi*, 344 F. Supp. 3d at 828 ("Defendants note that if the case is remanded, they will lose certain procedural advantages available in federal court. Despite this loss of procedural advantage, the Court finds the *Hensgens* factors weigh in favor of allowing amendment in this case.").

*      *      *

Because all four *Hensgens* factors weigh in favor of joinder, the Hennixes' motion to amend the Complaint to add AD&C as a defendant is granted.

## IV.    CONCLUSION

In sum, complete diversity existed at the time of removal, and therefore, removal was proper. However, because the Court grants the Hennixes' motion to amend the complaint to join AD&C as a nondiverse defendant, upon filing of the Amended Complaint, this Court will no longer have jurisdiction and will remand the case to the Court of Common Pleas. An appropriate order follows.